William GROSSMAN, Plaintiff,

v.

COMPUTER CURRICULUM CORPORATION, Defendant.

No. 3:98CV1747 (DJS).

United States District Court, D. Connecticut.

Sept. 29, 2000.

---

Ronald E. Lasky, Ronald E. Lasky & Associates, Michael J. Melly, New London, CT, for Plaintiff.

Jennifer L. Dixon, Miguel A. Escalera, Jr., Kainen, Escalera & McHale, PC, Susan M. Wright, Shipman & Goodwin, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION

SQUATRITO, District Judge.

The plaintiff, William Grossman, brings the instant action against his former employer, Computer Curriculum Corporation, alleging ten state law causes of action arising out of the course of his employment with the defendant.[1] Now pending before the court is the defendant's motion for summary judgment pursuant to Fed. R.Civ.P. 56(c). For the reasons that follow, the defendant's motion is GRANTED in part.

### FACTS

On November 22, 1993, the plaintiff applied for a position as an educational consultant with Computer Curriculum Corporation ("CCC") by submitting a letter of application. On or about December 9, 1993, Mr. Grossman also filled out an employment application for CCC. This application states in relevant part:

> I understand that if I am employed, my employment will be at-will and can be terminated by me or by the Company at any time, with or without cause ... and that this status can only be changed in writing by a vice president of human resources. I fully understand that if I am employed that no contractual relationship will exist and the Company may modify, change or revoke any of its employment policies, pay practices and/or benefits without my agreement.

(Def.'s Local Rule 9(c)1 Statement, Ex. A–4 at 4.) Mr. Grossman signed the employment application directly below this statement.

On December 17, 1993, Alan Bryant, vice president of human resources for

---

1. The court's jurisdiction over this action is based upon diversity of citizenship. *See* 28 U.S.C. § 1332.

CCC, sent Grossman a letter offering him employment with CCC as an educational consultant. This letter stated in part:

> If you choose to accept this offer, your employment with Computer Curriculum Corporation will be voluntarily entered into and will be for no specified period. As a result you will be free to resign at any time, for any reason or for no reason, as you deem appropriate. Computer Curriculum Corporation will have a similar right and may conclude its at-will employment with you at any time, with or without cause.

(Def.'s Local Rule 9(c)1 Statement, Ex. A–8 at 1.) Mr. Grossman placed his signature on a line at the end of the offer letter indicating "Agreed to and accepted" on December 23, 1993, and began his employment with CCC on December 27, 1993. (*Id.* at 2.)

Sometime after beginning his employment with CCC, Mr. Grossman received copies of the Company's employee handbooks. Mr. Grossman read portions of such handbooks. The Paramount Publishing Employee Handbook[2] states on the first page of the Handbook, in a section entitled "Introduction":

> The practices, policies, benefits and other information described in this Handbook are not conditions of employment and do not constitute promises of any kind by the employer. This Handbook is not intended to create, and does not create, a contract of employment, express or implied, or any other agreement between Paramount Publishing or any of its affiliates and their employees. Notwithstanding any of the provisions contained in this manual, the Company remains free to change, reduce or eliminate in whole or in part, any of the published or unpublished policies, practices and benefits without advance notice, without having to consult anyone and without anyone's agreement.

2. CCC is part of the Paramount Publishing Education Group. (*See* Def.'s Local Rule

Employment at Paramount Publishing and its affiliates is and continues to be at-will employment, and the Company continues to have the absolute power to discharge any employee with or without good cause.

(Def.'s Local Rule 9(c)1 Statement, Ex. A–5 at 2.) The Handbook also states on page D–1 in a section entitled "Personnel Administration, Employee Standards of Conduct": "Employment with Paramount Publishing and its affiliates is at-will employment, and the Company has the absolute power to discharge any employee with or without good cause." (*Id.* at 3.)

Mr. Grossman also received and read portions of a booklet entitled "An Employee's Guide to Working at CCC" which states in the Preface:

> The policies described in this guide do not constitute promises of any kind by CCC; our corporate parent, Simon & Schuster; or its parent, Viacom. This guide is not intended to create, and does not create, a contract of employment, express or implied, or any other agreement between CCC and any of its affiliates and their employees. Notwithstanding any of the provisions contained in this manual, the Company remains free to change, reduce or eliminate in whole or in part, any of the published or unpublished policies, practices and benefits without advance notice, without having to consult anyone and without anyone's agreement.

(Def.'s Local Rule 9(c)1 Statement, Ex. A–6 at 2.) The booklet also states on pages 9–10 in a section entitled "Management Practices, Standards of Conduct" that "[e]mployment at CCC is at-will employment, and the company has the absolute power to discharge any employee with or without good cause." (*Id.* at 3–4.) "Mr. Grossman was never told by anyone at CCC and received no writing from anyone at CCC

9(c)1 Statement, Ex. A–8 at 1.)

indicating that the employment at-will policy of the Company did not apply to him." (Def.'s Local Rule 9(c)1 Statement, ¶ 9.[3])

Mr. Grossman did not receive any written criticisms of his work performance prior to the summer of 1997. The defendant contends that, beginning in the summer and fall of 1997, the plaintiff's supervisor began receiving complaints from CCC's customers about Mr. Grossman's performance, and he discussed these complaints with the plaintiff on numerous occasions. Mr. Grossman, however, asserts that the "[d]efendant's managers set him up for discipline and termination by concocting false complaints and making false accusations about him, lying about him to customers and coworkers, and providing him with defective materials that were required for him to do his job, or in some instances, no materials at all, and then blamed him for the inconvenience these situations caused coworkers and customers." (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 9–10.) Mr. Grossman filed a formal grievance with CCC's human resources department on November 30, 1997, complaining about his perception that he was being harassed by his coworker's making false statements about his performance.

Mr. Grossman applied for a teaching position at Housatonic Community College in November, 1997. On December 15, 1997, Mr. Grossman's supervisor, Marie Milillo, e-mailed Mr. Grossman a sixty-day performance improvement plan addressing many of the complaints CCC contends it received from its customers. Mr. Grossman spoke with Ms. Milillo over the phone about his disagreement with the content of the plan, and the two agreed to meet on January 7, 1998, to further discuss the plan. On December 30, 1997, Mr. Grossman spoke with Liza Cuevas of CCC's human resources department about the

formal grievance he filed on November 30, 1997. Ms. Cuevas informed Mr. Grossman, orally and in writing, that she would be investigating the allegations in his complaint.

On January 5, 1998, Mr. Grossman accepted a teaching position with Housatonic Community College. On January 7, 1998, Mr. Grossman met with Ms. Milillo to discuss his concerns with the sixty-day performance improvement plan. On January 9, 1998, Mr. Grossman resigned from CCC effective January 23, 1998. His resignation letter, addressed to Betty Menacher, the vice president of CCC's educational consultant division, concludes by stating: "Thank you for your support and assistance during my four years at CCC." (Def.'s Local Rule 9(c)1 Statement, Ex. B.)

The plaintiff filed the instant action on September 2, 1998. His first amended complaint alleges breach of contract, promissory estoppel, intentional and negligent infliction of emotional distress, negligent misrepresentation, false light invasion of privacy, tortious wrongful discharge, defamation, breach of implied covenant of good faith and fair dealing and breach of implied contract.

## STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). The determination of what facts are material to a particular claim is made based

---

**3.** By failing to either admit or deny this assertion in his Local Rule 9(c)2 Statement, the plaintiff is deemed to have admitted this statement. *See* D. Conn. Local Rule 9(c)1 ("All material facts set forth in [the movant's Local Rule 9(c)1] statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 9(c)2.").

upon the substantive law upon which that claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Gallo,* 22 F.3d at 1223; *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

The defendant moves for summary judgment with respect to all counts of the plaintiff's first amended complaint on the grounds that there are no genuine issues as to any material facts and that CCC is entitled to judgment as a matter of law. The court will address each of the plaintiff's claims below.

### I. *Breach of Contract & Breach of Implied Contract*

■ The defendant argues that summary judgment is appropriate on the plaintiff's breach of contract claims because the plaintiff was an at-will employee and not subject to any express or implied employment contract with the defendant. The plaintiff contends that the defendant failed to include the appropriate disclaimers of the intention to contract in the various employment manuals and correspondence sent to him, and that defendant did, in fact, give him assurances of his continued employment at CCC when Betty Menacher, the vice president of CCC's educational consultant division, induced him to rescind his resignation in September, 1995, by promising him continued job security.

Under Connecticut law, representations contained in an employee handbook will give rise to an express or implied contract between an employer and employee only under certain circumstances. *See Finley v. Aetna Life & Cas. Co.,* 202 Conn. 190, 198, 520 A.2d 208 (1987), *overruled on other grounds by Curry v. Burns,* 225 Conn. 782, 626 A.2d 719 (1993). However, "[b]y eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract, employers can protect themselves against employee contract claims based on statements made in personnel manuals." *Id.* at 199, n. 5, 520 A.2d 208.; *see also Owens v. American Nat. Red Cross,* 673 F.Supp. 1156, 1165 (D.Conn.1987) (stating that the threshold question of whether a personnel manual issued by the defendant could be found to give rise to an enforceable contract is a question of law for the court on a motion for summary judgment).

■ In the instant case, CCC's employment application, offer letter and employee handbooks, all of which the plaintiff received and read at least in part, clearly indicate that the plaintiff was an at-will employee. Moreover, they contain explicit and conspicuous disclaimers of any inten-

tion to create enforceable contract rights. *See, e.g., Smith v. Shoreline Care Ltd.*, No. 360206, 1996 WL 365015, at * 4–5 (Conn.Super.Ct. May 17, 1996); *Lombardi v. Marketing Corp. of America*, No. CV 91 0293281, 1994 WL 247956, at * 1–3 (Conn.Super.Ct. May 23, 1994); *Rogers v. The Hartford Ins. Co.*, No. 0106204, 1994 WL 109857, at * 4 (Conn.Super.Ct. March 23, 1994); *Lawrence v. Summit Corp. of America*, No. 105085, 1993 WL 104502, at * 2–3 (Conn.Super.Ct. March 22, 1993); *Markgraf v. Hospitality Equity Investors, Inc.*, No. 308501, 1993 WL 53604, at * 2–3 (Conn.Super.Ct. Feb. 18, 1993); *Grieco v. The Hartford Courant Co.*, No. CV 90 0372593S, 1993 WL 28899, at * 3 (Conn.Super. Jan 27, 1993) (all determining that appropriate disclaimers in employee applications and handbooks such as the ones at issue in the instant case rendered plaintiffs at-will employees). The plaintiff has failed to offer evidence suggesting that the defendant modified the plaintiff's at-will status at any time during his employment.[4] Additionally, the plaintiff did not deny the defendant's assertion in it's Rule 9(c)1 Statement that he was never informed by anyone at CCC that the Company's employment at-will policy did not apply to him. Consequently, the plaintiff has failed to demonstrate a material factual dispute with respect to the existence of an express or implied employment contract with CCC. The defendant is therefore entitled to sum-

mary judgment with respect to the plaintiff's breach of express and implied contract claims contained in counts one and ten of the first amended complaint. See *Manning v. Cigna Corp.*, 807 F.Supp. 889, 893–96 (D.Conn.1991) (granting summary judgment for employer on the plaintiff's breach of express and implied contract claims where employee failed to establish that employment manual or verbal assurances created contractual liability).

## II. *Tortious Wrongful Discharge*

◼ The plaintiff alleges in count seven of his first amended complaint that he "was tortiously discharged in violation of public policy, expressed through State Law, Connecticut General Statutes § 52–237, et. seq. prohibiting libel and slander." (Pl.'s First Am. Compl. at 8.) In *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980), the Connecticut Supreme Court recognized a common law cause of action in tort for the discharge of an at-will employee "if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Id.* at 475, 427 A.2d 385 (emphasis in original). The defendant contends that no public policy violation can be implicated by CCC's conduct in the instant matter, thereby entitling it to summary judgment on this count of the plaintiff's complaint.[5]

4. The oral reassurances that Ms. Benacher, the vice president of CCC's educational consultant division, allegedly gave to the plaintiff when she induced him to rescind his resignation would not have modified the plaintiff's at-will employment status because Mr. Grossman's employment application clearly states that his employment status may only be modified in writing by a vice president of human resources. Moreover, the court concludes that Ms. Benacher's alleged reassurances of job security were not sufficiently specific as to give rise to an implied employment contract. *See Kelley v. United States Shoe Corp.*, No. CV 93 042492S, 1993 WL 466118, at * 2 (Conn.Super.Ct. November 5, 1993) ("In order to alter the common law employment 'at will' relationship, it is necessary to demonstrate a deliberate substitution of an employ-

ment policy which must be based upon specific representations rather than expressions of intentions with regard to future employment."); *see also Manning v. Cigna Corp.*, 807 F.Supp. 889, 895–96 (D.Conn.1991) (granting summary judgment where employer's oral promises of "continuous and secure employment" were insufficiently definite and promissory to form a contractual commitment).

5. The defendant also contends that the plaintiff's tortious discharge claim must fail because he has failed to demonstrate that his working conditions were so objectively intolerable such that a reasonable person would have felt forced to resign. However, as the court determines below that the plaintiff's tortious discharge claim is untenable because it does not implicate an important violation of

■ The Connecticut Supreme Court in *Sheets* acknowledged that courts should not lightly intervene in the at-will employment relationship to impair the exercise of managerial discretion. *See id.* at 477, 427 A.2d 385. In *Morris v. The Hartford Courant Co.*, 200 Conn. 676, 513 A.2d 66 (1986), the Court again described the public policy exception to the general rules governing the termination of at-will employment relationships as a narrow one, stating:

> This public policy exception to the employment at will rule ... attempts to balance the competing interests of employer and employee.... The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability. Employee job security, however, is protected against employer actions that contravene public policy.

*Id.* at 679, 513 A.2d 66.

In the instant case, the court concludes that the plaintiff's claim that the defendant dismissed him "in part because he resisted and did not accept Defendant's libelous and slanderous actions toward him," (Pl.'s First Am. Compl. at 8), does not rise to the level of an "important violation of public policy." *Compare Morris*, 200 Conn. at 680, 513 A.2d 66 (concluding that a false but negligently made accusation of criminal conduct as a basis for dismissal is not derived from some important violation of public policy), *with Sheets*, 179 Conn. at 480, 427 A.2d 385 (determining that an employee allegedly discharged in retaliation for his insistence that his employer comply with the requirements of the state Food, Drug and Cosmetic Act stated a valid cause of action).[6] Therefore, the defendant's motion for summary judgment with respect to the plaintiff's tortious wrongful discharge claim contained in count seven of the first amended complaint is granted.

### III. *Breach of Implied Covenant of Good Faith and Fair Dealing*

■ The plaintiff also alleges in count nine of his first amended complaint that the "[p]laintiff's constructive discharge was a breach of the implied covenant of good faith and fair dealing existing between Plaintiff and Defendant because Plaintiff's constructive discharge was in violation of public policy, expressed through State Law, Connecticut General Statutes § 52–237 et. seq. prohibiting libel and slander." (Pl.'s First Am. Compl., at 9.) However, "absent a showing that the discharge involves an impropriety which contravenes some important public policy, an [at-will] employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing." *Carbone v. Atlantic Richfield Co.*, 204 Conn. 460, 470–71, 528 A.2d 1137 (1987). As the court has determined above that the defendant's alleged actions do not contravene some important public policy, the plaintiff's claim of breach of an implied covenant of good faith and fair dealing must fail. Accordingly, the defendant's motion for summary judgment with respect to this claim contained in count nine of the plaintiff's first amended complaint is granted.

### IV. *Promissory Estoppel*

In count two of his first amended complaint, the plaintiff alleges that "Defendant's verbal representations to [him] constituted promises he reasonably and justifiably relied upon to his detriment by continuing his employment with Defendant." (Pl.'s First Am. Compl. at 5.) The defendant argues that the plaintiff's promissory estoppel claim fails because the defendant made no promises which could reasonably have been expected to

---

public policy, it need not reach the defendant's alternate ground for summary judgment with respect to this claim.

6. The court notes that the state law upon which the plaintiff relies for the invocation of the public policy exception, Conn. Gen.Stat. § 52–237, simply sets forth the remedies available in libel actions.

induce reliance on the part of the plaintiff.

■ Connecticut recognizes the doctrine of promissory estoppel as laid out in the Restatement (Second) of Contracts, which "states that ... '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *D'Ulisse– Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 213, 520 A.2d 217 (1987) (quoting Restatement (Second), Contracts § 90 (1973)). The Court went on to explain:

> A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all.

*Id.* Finally, the Court pointed out that any challenged representations concerning future employment must be sufficiently promissory or definite to support contractual liability-i.e., they must contain "the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and [his] salary and fringe benefits." *Id.* at 215, 520 A.2d 217.

■ The court concludes that the oral reassurances of continued job security that Ms. Benacher, CCC's vice president of the educational consultant division, allegedly gave to the plaintiff when she induced him to rescind his resignation were "neither sufficiently promissory nor sufficiently definite to support contractual liability" when viewed in conjunction with the defendant's various disclaimers concerning the plaintiff's at-will employment status. *D'Ulisse– Cupo,* 202 Conn. at 214, 520 A.2d 217; *see, e.g., Barbuto v. The William Backus Hosp.,* No. 105452, 1995 WL 235068, at * 5–6 (Conn.Super. April 13, 1995) (finding that representations that the defendant would never take away the plaintiff's position as long as she wished to continue working a particular shift failed to constitute a definite promise of employment upon which the plaintiff could reasonably have relied because the representations manifested no present intention to undertake immediate contractual obligations to the plaintiff and did not contain any of the material terms essential to an employment contract); *Emanuele v. Boccaccio & Susanin, Inc.,* No. CV 90 0379367S, 1992 WL 79823, at * 2–3 (Conn.Super. April 10, 1992) (determining that oral statements that the plaintiff had nothing to worry about regarding her position and that her job was secure as long as she performed as she had in the past did not constitute a definite promise of employment upon which the plaintiff could reasonably have relied in support of her promissory estoppel claim).[7] Therefore, the defendant's motion for summary judgment with respect to the plaintiff's promissory estoppel claim contained in count two of the first amended complaint is granted.

## V. *Negligent Misrepresentation*

The defendant also seeks summary judgment with respect to the plaintiff's negligent misrepresentation claim on the ground that the plaintiff was not justified in relying on any alleged claim of job

---

7. Likewise, the defendant's representations concerning the plaintiff's duties and performance appraisals do not contain the material terms essential to the creation of an employment contract upon which the plaintiff could reasonably have relied. *See Lombardi v. Marketing Corp. of America,* No. CV 91 0293281, 1994 WL 247956, at * 4 (Conn.Super.Ct. May 23, 1994) (finding that statements in employee handbook concerning methods of appraising the plaintiff's job performance were not clear and definite promises upon which the plaintiff could have reasonably relied to govern the terms of her employment in light of the written at-will employment agreement and disclaimer in the employee handbook).

security or termination for just cause in light of the plain and repeated statements of at-will employment contained in the Company's employment application, offer letter and employment handbooks.

 " 'One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " *D'Ulisse–Cupo,* 202 Conn. at 218, 520 A.2d 217 (emphasis added) (quoting Restatement (Second), Torts § 552 (1979)). However, in the instant matter, in light of the defendant's repeated assertions of the plaintiff's at-will employment status, the "[p]laintiff's conclusion that he was guaranteed continuous employment, as long as his job performance gave no cause for termination, not only falls short of the 'justifiable reliance' required by § 552 [of the Restatement (Second) of Torts], but also defies common sense." *Eckstrom v. Fasco Inds., Inc.,* 14 Conn. L. Trib. 27, 22 (D.Conn.1988) (concluding that the employer's representations that the plaintiff had a "bright" and "stable" future with the company did not give rise to an action for negligent misrepresentation, noting "[i]f such comments were actionable, employers would effectively be barred from any communication concerning their hopes for the futures of prospective employees").

## VI. *Negligent Infliction of Emotional Distress*

 Next, the defendant contends that the plaintiff's allegations that his managers concocted false accusations about his job performance, lied to customers about him and attempted to bring about his termination, even if true, are insufficient to establish a claim of negligent infliction of emotional distress because, under Connecticut law, "negligent infliction of emotional distress in the employment context arises only when it is 'based upon unreasonable conduct of the defendant in the termination process.' " *Parsons v. United Technologies Corp.,* 243 Conn. 66, 88, 700 A.2d 655 (1997) (quoting *Morris v. The Hartford Courant Co.,* 200 Conn. 676, 682, 513 A.2d 66 (1986)). However, as the plaintiff alleges that he was constructively discharged, his claim of negligent infliction of emotional distress survives summary judgment on this ground. *Accord Hart v. Knights of Columbus,* No. CV 98 0417112S, 1999 WL 682046, at * 4 (Conn.Super.Ct. Aug. 17, 1999) (determining that the plaintiff was not constructively discharged and therefore could not maintain her negligent infliction of emotional distress claim); *Brosler v. Food Automation–Service Techniques, Inc.,* No. 3:96–2345 (DJS), 1997 WL 711438, at * 5 (D.Conn. Aug. 25, 1997) (allowing negligent infliction of emotional distress and constructive discharge claims to remain pending for trial following ruling on motion to dismiss).[8] Accordingly, the defendant's

---

8. The court notes that the Second Circuit Court of Appeals, in dictum, has recently expressed doubt as to whether the Connecticut Supreme Court would continue to limit the tort of negligent infliction of emotional distress to actions taken in the course of an employee's termination. *See Malik v. Carrier Corp.,* 202 F.3d 97, at n. 1 (2d Cir.2000). The Second Circuit, citing the Connecticut Superior Court decision of *Karanda v. Pratt & Whitney Aircraft,* No. CV–98–582025S, 1999 WL 329703, at *4 (Conn.Super. May 10, 1999), speculated that the Connecticut Supreme Court might permit a claim for negligent infliction of emotional distress in the absence of a termination, in light of the 1993 amendments to the Workers' Compensation Act that excluded coverage for mental and emotional impairment. *See id.* These amendments followed the seminal decision of *Morris v. The Hartford Courant Co.,* 200 Conn. 676, 682, 513 A.2d 66 (1986), although they predated by four years the Connecticut Supreme Court's decision in *Parsons,* which quoted *Morris* with approval. The Second Circuit read the Court's statement in *Parsons,* that "few courts have addressed the requirements of a claim for [emotional distress] within the context of an employment relationship as a whole, much less in the context of the termination of such a

motion for summary judgment with respect to the plaintiff's negligent infliction of emotional distress claim contained in count four of the first amended complaint is denied.

## VII. *Intentional Infliction of Emotional Distress*

The plaintiff claims in count three of his first amended complaint that the "Defendant severely harassed and mistreated [him], and created a situation where he was denied effective assistance in the performance of his job, open communication and fairness, unfairly placed on a 60-day performance improvement plan and then constructively fired." (Pl.'s First Am. Compl. at 6.) The defendant seeks summary judgment with respect to this claim on the ground that the conduct alleged, even if true, falls short of the extreme showing required to prevail upon such a claim.

■ In order to prevail on his claim of intentional infliction of emotional distress, the plaintiff must establish that: 1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct was the cause of the plaintiff's distress; and 4) the emotional distress sustained by the plaintiff was severe. *See Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). Whether the alleged misconduct is sufficient to satisfy these elements is initially a question of law for the court. *See Mellaly v. Eastman Kodak Co.*, 42 Conn.Supp. 17, 18, 597 A.2d 846 (1991).

■ For behavior to be considered extreme and outrageous, it must meet a rigorous and stringent standard. *See Reed v. Town of Branford*, 949 F.Supp. 87, 92 (D.Conn.1996).

"Liability has been found only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, 'Outrageous!' "

*Scandura v. Friendly's Ice Cream Corp., Inc.*, No. CV 930529109S, 1996 WL 409337, at *2 (Conn.Super.Ct. June 26, 1996) (quoting 1 Restatement (Second), Torts § 46, cmt. d).

■ The court concludes that there remains a disputed issue of material fact with respect to whether the defendant's alleged conduct, if found to have occurred, was sufficiently extreme and outrageous as to constitute the intentional infliction of emotional distress. *See, e.g., Musacchio v. Cooperative Educ. Servs.*, No. CV 94 0137050S, 1995 WL 681664, at * 2 (Conn.Super. Nov.8, 1995) (denying the defendant's motion for summary judgment with respect to the plaintiff's intentional infliction of emotional distress claim where the plaintiff alleged that she was terminated following an altercation in which she was "told [she] was lying, but that was just not the case"); *Decampos v. Kennedy Center, Inc.*, No. CV 89 0260290 S, 1990 WL 264687, at * 4 (Conn.Super.Ct. Nov. 21, 1990) (denying defendants' motion to strike plaintiff's intentional infliction of

relationship," 243 Conn. at 89, 700 A.2d 655, as "arguably acknowledg[ing] the possibility that such a claim might arise in the employment context." *Malik,* 202 F.3d 97, at n. 1. The Second Circuit concluded: "Whether a viable emotional distress claim for negligent acts in the employment context exists under Connecticut law is thus unclear." *Id. But see Fonseca v. RBC Heim Bearings Corp.,* 87

F.Supp.2d 137, 139–40 (D.Conn.2000) (following the well-established precedent of this District and the majority of Connecticut Superior Court decisions after *Karanda* which continued to require an unlawful termination in order to state a claim for negligent infliction of emotional distress in an employment context).

emotional distress claim because plaintiff's allegations that the defendants made false statements as to her job performance intentionally and with malice created a disputed material fact as to whether the defendants' conduct was in fact extreme and outrageous).[9] Accordingly, the defendant's motion for summary judgment with respect to this claim contained in count three of the plaintiff's first amended complaint is denied.

## VIII. *False Light Invasion of Privacy*

The plaintiff alleges in count six of his first amended complaint that "[t]he oral and written statements published by Defendant's agents representing that Plaintiff had engaged in a host of improper activities and their fabrication of customer dissatisfaction and complaints placed Plaintiff in a false light that is highly offensive to a reasonable person, thereby giving rise to a claim of false light invasion of privacy." (Pl.'s First Am. Compl. at 8.) The defendant seeks summary judgment with respect to this claim, arguing that the plaintiff has failed to offer any evidence that CCC officials "published" disparaging remarks about the plaintiff, as required to establish that he was placed in a false light.

■ Connecticut courts have recognized a cause of action for invasion of privacy, and in doing so have adopted the Restatement (Second) of Torts formulation of that action. *See Goodrich v. Waterbury Republican–American Inc.,* 188 Conn. 107, 126–28, 448 A.2d 1317 (1982). The Restatement recognizes four specific categories of invasion of privacy: 1) unreasonable intrusion on the seclusion of another; 2) appropriation of the other's name or likeness; 3) unreasonable publicity given to the other's private life; and 4) publicity that unreasonably places the other in a

false light before the public. *See* Restatement (Second), Torts § 652A (1977). Here, the plaintiff's claim falls under the fourth category, false light invasion of privacy. The Restatement defines a false light invasion of privacy as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second), Torts § 652E (1977). An essential element of a false light invasion of privacy claim is that the defendant gives publicity to false information. *See Handler v. Arends,* 1995 WL 107328, at *11 (Conn.Super.Ct. March 1, 1995); *LaFontaine v. Family Drug Stores,* 33 Conn.Supp. 66, 73, 360 A.2d 899 (1976) ("[T]he gravamen of the action of invasion of privacy . . . is and should remain publication by the defendant.").

> "Publicity" . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. . . . Thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Restatement (Second), Torts § 652D, cmt. a.

■ In the employment context, courts have determined that when "information [is] conveyed only to employees . . . with a duty, responsibility and a need for such information" there is not sufficient publici-

---

9. The court notes that the plaintiff must also establish that he suffered severe emotional distress as a result of the defendant's alleged conduct in order to prevail on his intentional infliction of emotional distress claim. How-

ever, as the defendant has not challenged this element of the plaintiff's claim at summary judgment, the court makes no finding with respect to this issue in the instant ruling.

ty to support an action for invasion of privacy. *Rogers v. International Business Machines Corp.*, 500 F.Supp. 867, 870 (W.D.Pa.1980); *see, e.g., Pace v. Bristol Hosp.*, 964 F.Supp. 628, 631–32 (D.Conn. 1997) (concluding that former employer's dissemination of information regarding circumstances of former employee's discharge to management personnel, interested co-workers and independent contractor with whom plaintiff worked did not constitute "publicity" necessary to state a false light claim). However, if an employer communicates false information concerning a former employee "to so many persons that the matter must be regarded as substantially certain to become one of public knowledge," a false light claim may lie. *Krochalis v. Insurance Co. of North America*, 629 F.Supp. 1360, 1371–72 (E.D.Pa.1985) (denying defendant's motion for summary judgment where defendant was alleged to have made false statements about the plaintiff which became common knowledge throughout the entire industry in which the plaintiff worked); *see, e.g., Decampos v. Kennedy Center, Inc.*, No. CV89 0260290 S, 1990 WL 264687, at * 5 (Conn.Super.Ct. Nov. 21, 1990) (denying the defendants' motion to strike the plaintiff's false light invasion of privacy claim where the plaintiff alleged that the defendants repeated false accusations concerning the plaintiff to numerous prospective employers and other persons).

In the instant case, the plaintiff alleges that the defendant fulfilled the publication requirement of the false light invasion of privacy claim by conveying false accusations of the plaintiff's work performance to his customers throughout the school system. If found to be true, these allegations could lead a reasonable jury to conclude that the defendant is liable to the plaintiff for false light invasion of privacy as alleged in count six of the first amended complaint. Therefore, the defendant's motion for summary judgment with respect to this claim is denied.

## IX. *Defamation*

Finally, the defendant challenges the plaintiff's defamation claim on the ground that the defendant's statements concerning the plaintiff's work performance to its employees and customers were purely statements of opinion and therefore, not defamatory speech.

 "Defamation is defined as, '[a]n intentional communication, either published or publicly spoken, that injures another's reputation or good name; the unprivileged publication of false statements which naturally and proximately result in injury to another.'" *Olumide v. Travelers Ins. Co.*, No. CV 910505575, 1994 WL 43458, at * 6 (Conn.Super.Ct. Feb. 3, 1994) (quoting Black's Law Dictionary 417 (6th ed.1990)). The threshold question is whether, as a matter of law, the statement is an expression of fact or mere opinion. *See Parks v. Steinbrenner*, 131 A.D.2d 60, 60, 520 N.Y.S.2d 374 (N.Y.A.D. 1.1987). "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known .... An opinion, on the other hand is a personal comment about another's conduct, qualifications, or character that has some basis in fact." *Goodrich v. Waterbury Republican–American, Inc.*, 188 Conn. 107, 111–12, 448 A.2d 1317 (1982). While unprivileged, false statements of fact may constitute defamation, statements concerning work performance are merely expressions of opinion and, therefore, are not actionable as defamation. *See id.; see, e.g., Scandura v. Friendly's Ice Cream Corp.*, Inc., No. CV 93 0529109S, 1996 WL 409337, at * 6–7 (Conn.Super. June 26, 1996) (concluding that statements which were mere expressions of the plaintiff's competence as a manager were not defamatory, but leaving for the trier of fact the determination of whether certain factual statements about the plaintiff constituted defamation); *Torok v. Proof*, No. CV 90 0113204, 1993 WL 28878, at * 2 (Conn.Super.Ct. Feb. 1, 1993) (determining that statement that the plain-

tiff was not a good accountant was an expression of opinion and, therefore, did not constitute a defamatory statement).

 In the instant case, the plaintiff alleges that the defendants, in addition to making negative assessments of the plaintiff's professional competence, made specific factual allegations of misconduct which the plaintiff contends were untrue. (*See, e.g.,* Pl.'s Grievance Letter, Def.'s Local Rule 9(c)1 Statement, Ex. A–11, at 10 (stating that the defendant accused the plaintiff of taking a customer's computer software).) The court concludes that the defendant's statements concerning the plaintiff's work performance are not actionable as defamation because they were merely expressions of opinion. However, there remains a genuine issue of material fact as to whether the defendant published any unprivileged, false statements of fact with respect to the plaintiff which harmed his reputation. Therefore, the defendant's motion for summary judgment on the plaintiff's defamation claim contained in count eight of the first amended complaint is denied with respect to any factual statements the defendant made about the plaintiff which he contends are untrue.

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment (Doc. # 30) is **GRANTED** with respect to the plaintiff's claims alleging breach of express contract, promissory estoppel, negligent misrepresentation, tortious wrongful discharge, breach of implied covenant of good faith and fair dealing and breach of implied contract contained in counts one, two, five, seven, nine and ten of the plaintiff's first amended complaint, respectively. The motion is **DENIED** in all other respects. This matter shall proceed to trial on the plaintiff's claims of intentional infliction of emotional distress, negligent infliction of emotional distress, false light invasion of privacy and defamation contained in counts three, four, six and eight of the plaintiff's first amended complaint.

As discovery has concluded and the court has ruled on the aforementioned dispositive motion, this matter is deemed trial ready.

The parties shall file their joint trial memorandum by **November 17, 2000.** If any party fails to cooperate in the filing of the joint trial memorandum, the memorandum shall be filed individually and the noncooperating party shall have its case defaulted, dismissed, and/or sanctions imposed.

The parties shall contact the undersigned's chambers during the week of **October 9, 2000,** to schedule a settlement conference prior to **November 17, 2000,** which shall not delay the filing of the trial memorandum. Further, the parties shall appear before the undersigned for a pretrial conference on November 22, 2000, at 4:00 p.m. This case shall be tried during December, 2000, with jury selection taking place on December 5, 2000.

It is so ordered.