**Lisa DELISE, Admx. of the Estate
of Mark Delise, Plaintiff,**

v.

**METRO–NORTH RAILROAD
CO., Defendant.**

**Civ. No. 3:06CV00428 (AWT).**

United States District Court,
D. Connecticut.

Aug. 20, 2009.

Charles C. Goetsch, Scott E. Perry, Cahill Goetsch & Perry, P.C., New Haven, CT, for Plaintiff.

Charles A. Deluca, Ryan Ryan Deluca, LLP, Stamford, CT, for Defendant.

## ORDER RE MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. No. 65) is hereby granted in part and denied in part. Summary judgment is being granted in favor of the defendant with respect to the FMLA interference claim in Count One (but not the FMLA retaliation claim in that count), Count Three (FELA claim for intentional infliction of emotional distress) and Count Six (common law claim for negligent infliction of emotional distress).

The defendant's memorandum in support of the instant motion is organized around four points. The defendant makes additional arguments in its supplemental memoranda concerning hearsay objections to the plaintiff's Local Rule 56(a)2 Statement.

### Point I. Metro–North's Contention That it Did Not Violate Mr. Delise's Rights under the FMLA

In Count One, the plaintiff brings two FMLA claims, an interference claim and a retaliation claim.

### A. FMLA Interference

In *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), the Supreme Court found a Department of Labor regulation "invalid because it alters the FMLA's cause of action in a fundamental way: It relieves employees of the burden of proving any real impairment of their rights and resulting prejudice." *Id.* at 90, 122 S.Ct. 1155. The Court explained that "§ 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered." *Id.* at 89, 122 S.Ct. 1155. Here it is undisputed that Mr. Delise got the FMLA leave he requested, so he did not suffer any prejudice as the result of any interference with his exercise of his FMLA rights by Metro–North. Therefore, Metro–North is entitled to summary judgment on the FMLA interference claim.

### B. FMLA Retaliation

"In order to make out a prima facie case, [a defendant] must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). The third and fourth elements are contested here. As to the third element, there is a genuine issue of material fact as to whether Mr. Delise was constructively discharged and suffered an adverse employment action. As to the fourth element, a genuine issue of material fact exists as to whether any adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. The court notes that, in its sup-

porting memorandum, Metro–North focuses on its version of events and discounts the evidence proffered by the plaintiff, contrary to the legal standard governing motions for summary judgment.

## Point II: Metro–North's Contention that the Plaintiff's Tort Claims Under FELA Fail

### A. FELA Intentional Infliction of Emotional Distress

The plaintiff concedes that Metro–North is entitled to summary judgment on Count Three, the FELA claim for intentional infliction of emotional distress.

### B. FELA Negligent Supervision

■ "In order to demonstrate negligent supervision, [a plaintiff] must show that [the defendant] 'knew or should have known prior to the incidents of propensities of [an employee] to commit such acts.'" *Higgins v. Metro–North R. Co.*, 318 F.3d 422, 426 (2d Cir.2003) (internal quotations, citations, and alterations omitted). Metro–North argues that it is entitled to summary judgment because Mr. Delise was not a Metro–North employee at the time he committed suicide, and because the plaintiff cannot show that Mr. Delise's suicide was foreseeable.

■ As to the first argument, former employees who were subject to conduct or conditions during their employment by a railroad that later result in injury can recover under the FELA. *See Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 142, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003) (mental anguish damages recoverable for a former employee's fear of developing cancer from work-related exposure to asbestos); *Pothul v. Consolidated Rail Corp.*, 94 F.Supp.2d 269, 271–73 (N.D.N.Y.2000) (former employee could proceed with his claim for future wages and benefits under FELA for work-related personal injuries).

In *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), the Supreme Court stated:

> Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

*Id.* at 506–507, 77 S.Ct. 443.

■ In light of this standard, the court concludes that as to the second argument, genuine issues exist as to whether negligent supervision by Metro–North played a part in Mr. Delise's death, and as to whether Mr. Delise's suicide was the result of an "uncontrollable impulse." With respect to this claim, Metro–North also focuses on its evidence and fails to acknowledge evidence proffered by the plaintiff. Therefore, the defendant's motion is being denied with respect to Count Two.

## Point III: Metro–North's Contention That the Plaintiff Cannot Show, That Metro–North Acted Unreasonably During the Termination Process and That Suicide Broke the Chain of Causation

### A. Common Law Claim for Intentional Infliction of Emotional Distress

■ The comment section of the *Restatement (Second) of Torts* § 46 (1965) states that to support this claim, conduct

must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at comment d. "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* at comment e. "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." *Id.* at comment f. "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Id.* at comment h. Here, a genuine issue of material fact exists, *inter alia,* as to whether the defendant's conduct was extreme and outrageous because Fauci was in a position of actual authority over Mr. Delise, and Fauci had knowledge that Mr. Delise was particularly susceptible to emotional distress, and the circumstances surrounding Fauci's interaction with Mr. Delise on September 22. Therefore, the motion for summary judgment is being denied with respect to Count Five, the Connecticut common law claim, in the alternative, for intentional infliction of emotional distress.

## B. Common Law Claim for Negligent Infliction of Emotional Distress

■■ The Connecticut Supreme Court has held that where negligent infliction of emotional distress in the employment context is alleged, the tort occurs only when it is "based upon unreasonable conduct of the [employer] in the termination process." *Parsons v. United Technologies Corp.,* 243 Conn. 66, 88, 700 A.2d 655 (1997) (citation omitted). A constructive discharge claim can be the basis for a negligent infliction of emotional distress claim and is consistent with Connecticut constructive discharge law, "because in a constructive discharge case the employment relationship is already terminated, allegedly involuntarily, and thus the effect of allowing the claim is no different than if the plaintiff had been actually discharged." *Natividad Edwards v. New Opportunities, Inc,* Civ. No. 3:05cv1238(JCH), 2007 WL 947996, at *6, 2007 U.S. Dist. LEXIS 21667, at *21 (D.Conn. March 26, 2007), *citing Grey v. City of Norwalk Bd. of Educ.,* 304 F.Supp.2d 314, 331–33 (D.Conn.2004). *See also Grossman v. Computer Curriculum Corp.,* 131 F.Supp.2d 299, 300 (D.Conn. 2000) (holding that "as plaintiff alleges that he was constructively discharged, his claim of negligent infliction of emotional distress survives summary judgment"); *Rapp v. United Technologies Corp.,* No. CV 960557477S, 1999 WL 329815 (Conn.Super.Ct. Apr. 29, 1999) (striking plaintiff's negligent infliction of emotional distress claim where plaintiff failed to prove constructive discharge); *but see Boateng v. Apple Health Care, Inc.,* 156 F.Supp.2d 247, 250 (D.Conn.2001) (holding that a claim for negligent infliction of emotional distress cannot be maintained in a constructive discharge case).

> In the case of a constructive discharge, however, the conundrum becomes when does the ongoing employment relationship end and the termination process begin for purposes of determining what events and conduct by the employer may be considered in evaluating a negligent infliction of emotional distress claim.

*Pecoraro v. New Haven Register,* 344 F.Supp.2d 840, 846 (D.Conn.2004), *citing*

*Perodeau v. City of Hartford,* 259 Conn. 729, 758–59, 792 A.2d 752 (2002). One must focus on whether facts "are alleged concerning events that occurred during the resignation process or once plaintiff terminated her employment." *Pecoraro,* 344 F.Supp.2d at 847.

■ Here the plaintiff has not produced evidence of events occurring during the resignation process or once Mr. Delise terminated his employment. Rather, the plaintiff contends that Connecticut state courts have since 2005 considered conduct leading up to a termination as a basis for a claim for negligent infliction of emotional distress. (*See* Plaintiff's Memorandum in Opposition to Metro–North's Motion For Summary Judgment (Doc. No. 69)("Pl.'s Br.") at 46 n. 2.) This proposition is not supported by the cases cited by the plaintiff. Therefore, Metro–North's motion for summary judgment is being granted as to Count Five, the Connecticut common law claim, in the alternative, for negligent infliction of emotional distress.

## C. Connecticut Wrongful Death Statute

■ Metro–North contends that Mr. Delise's suicide broke the chain of causation. However, genuine issues of material fact exist as to whether Mr. Delise's suicide was the result of an "uncontrollable impulse." Therefore, the motion for summary judgment is being denied with respect to Count Four, the claim, in the alternative, under the Connecticut Wrongful Death Statute.

## Point IV: Railroad Labor Act Preclusion/Pre-emption

■ The heart of Metro–North's argument is that Counts Two through Six are precluded (Counts Two and Three) or pre-empted (Counts Four, Five, and Six) by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*[1] Metro–North contends that "the claims' resolution would require interpretation of the CBA." (Defendant's Memorandum of Law in Support of its Motion for Summary Judgment (Doc. No. 65) ("Def.'s Br.") at 31, *citing Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 260, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).) However, *Norris* does not support Metro–North's position. In its discussion of RLA preemption, the Court discussed the concept of a minor dispute, and noted that "[t]he distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing [CBA]." *Id.* at 256, 114 S.Ct. 2239 (citation omitted). The court stated "we have held that the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA.... [U]nder [*Missouri Pacific R. Co. v. Norwood,* 283 U.S. 249, 258, 51 S.Ct. 458, 75 L.Ed. 1010 (1931) ], substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." *Id.* Then addressing the dispute between the parties in *Norris,* the Court stated:

> Here, in contrast, the CBA is not the "only source" of respondent's right not to be discharged wrongfully. In fact, the "only source" of the right respondent asserts in this action is state tort law. Wholly apart from any provision of the CBA, petitioners had a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistle-blowing. The parties' obligation under the RLA to arbitrate disputes arising out of the application or inter-

---

**1.** Metro–North also argues that the court lacks jurisdiction to adjudicate the "constructive discharge" claim under the FMLA in Count One because it is pre-empted by the RLA. However, the claims in Count One are FMLA claims, not constructive discharge claims as such. For the reasons discussed below, the FMLA claim is not precluded.

pretation of the CBA did not relieve petitioners of this duty. *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), confirms that 'minor disputes' subject to RLA arbitration are those that involve duties and rights created or defined by the CBA. In *Buell,* a railroad employee sought damages for workplace injuries under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.,* which provides a remedy for a railroad worker injured through an employer's or co-worker's negligence. The railroad argued that, because the alleged injury resulted from conduct that was subject to the CBA, the employee's sole remedy was through RLA arbitration. The Court unanimously rejected this argument, emphasizing that the rights derived from the FELA were independent of the CBA:

> 'The fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages.... The FELA not only provides railroad workers with substantive protection against negligent conduct that is independent of the employer's obligations under its collective-bargaining agreement, but also affords injured workers a remedy suited to their needs, unlike the limited relief that seems to be available through the Adjustment Board. It is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion.' 480 U.S., at 564–565, 107 S.Ct., at 1415.

*Norris,* 512 U.S. at 258–59, 114 S.Ct. 2239. "The pre-emption standard that emerges from the line of cases leading to Buell—that a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the CBA—is virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA, 29 U.S.C. § 185." *Id.* at 260, 114 S.Ct. 2239. The language in *Norris* cited to by Metro–North appears in the Court's discussion of the pre-emption standard involving § 301 of the LMRA. In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Court

> recognized that where the resolution of a state-law claim depends on an interpretation of the CBA, the claim is preempted. *Id.,* at 405–406, 108 S.Ct. 1877.... It observed, however, that 'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.' 486 U.S., at 407, 108 S.Ct. at 1882. The state-law retaliatory discharge claim turned on just this sort of purely factual question: whether the employee was discharged or threatened with discharge, and, if so, whether the employer's motive in discharging her was to deter or interfere with her exercise of rights under [the state's] worker's compensation law.

While recognizing that 'the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause,' *id.,* at 408, 108 S.Ct., at 1883, the Court disagreed that

> "such parallelism render[ed] the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that fed-

eral law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.*, at 408–410, 108 S.Ct., at 1883.

The Court's ruling in *Lingle* that the LMRA pre-empts state law only if a state-law claim is dependent on the interpretation of a CBA is fully consistent with the holding in *Buell*, 480 U.S., at 564–565, 107 S.Ct., at 1415, that the RLA does not pre-empt 'substantive protection ... independent of the [CBA],' with the holding in [*Terminal R. Ass'n of St. Louis v. Brotherhood of Railroad Trainmen*, 318 U.S. 1, 7, 63 S.Ct. 420, 87 L.Ed. 571 (1943)] that the RLA does not pre-empt basic 'protections ... laid down by state authority,' with the conclusion in [*Andrews v. Louisville & N.R. Co.*, 406 U.S. 320, 324, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972)], that a state-law claim is pre-empted where it 'depend[s] on the interpretation' of the CBA, and with the description in [*Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 305, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989)], of a minor dispute as one that can be 'conclusively resolved' by reference to an existing CBA.

*Norris*, 512 U.S. at 261–63, 114 S.Ct. 2239.

■ Here the plaintiff's claims at issue exist independently of, and were not created by, the CBA, and they cannot be conclusively resolved by reference to the CBA. Therefore the plaintiff's FELA and state law causes of action should not be dismissed as precluded or pre-empted by the RLA.

**Additional Point: Hearsay Objections to Plaintiff's Local Rule 56(a)2 Statement**

Metro–North makes numerous hearsay objections to the plaintiff's Local Rule 56(a)(2) Statement. (*See* Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. No. 78) at 2 n. 1 and Defendant's Reply to Plaintiff's Rule 56(a)2 Statement (Doc. No. 79).) Some of the issues to which these objections relate are not material, and some of the objections are as to details that are relevant but not material to the court's analysis. In addition, certain evidence that is objected to as inadmissible hearsay is relevant and highly probative for non-hearsay purposes, *e.g.* notice. In other instances, the court expects that the plaintiff will be able to proceed under an exception to the hearsay rule. Also, in some instances, either Fauci or the defendant has admitted to the content of the purported hearsay statements. While the court acknowledges that, based on the current record, certain of the hearsay objections have merit, the court has concluded that the plaintiff has proffered admissible evidence sufficient to create genuine issues of material fact with respect to the elements of each of the claims that have survived summary judgment.

It is so ordered.