**Willhemina BOATENG, Plaintiff,**

v.

**APPLE HEALTH CARE, INC.
and Ledgecrest Health Care
Center, Defendants.**

**Civil No. 3:00CV402(AVC).**

United States District Court,
D. Connecticut.

Aug. 23, 2001.

Angelo Cicchiello, Stacy L. Buden, Hartford, CT, for plaintiff.

Rachel L. Kittredge, Avon, CT, for defendants.

### RULING ON THE DEFENDANTS' MOTION TO DISMISS

COVELLO, Chief Judge.

This is an action for damages and injunctive relief. It is brought by Willhemina Boateng against her employers, Apple Health Care, Inc. ("Apple") and Ledgecrest Health Care Center ("Ledgecrest") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] as amended by the Civil Rights Act of 1991, and common law tenets concerning negligent infliction of emotional distress. In it, Boateng alleges that Apple and Ledgecrest discriminated against her based on her race and retaliated against her after she filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). In addition, she alleges that the defendants racially-charged behavior forced her to resign, thereby causing her "considerable emotional and psychological pain and suffering, including major depression and acute stress reaction."

Apple and Ledgecrest now move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the Title VII claim to the extent it is based on Boateng's January 2000 constructive discharge, arguing that this court lacks jurisdiction to adjudicate the claim. They also move to dismiss count two of the complaint, pursuant to Rule of 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Boateng's cause of action for negligent infliction of emotional distress fails to state a claim upon which relief can be granted.

---

1. Title 42 of the United States Code, section 2000e–2(a) states in relevant part: "It shall be an unlawful employment practice for an employer ... to discriminate against any individual because of such individual's race, color religion, sex or national origin." 42 U.S.C. § 2000e–2(a).

The issues presented are: (1) whether this court has subject matter jurisdiction over Boateng's claim of constructive discharge despite the fact that Boateng did not include this claim in her CHRO charge; (2) whether this court has subject matter jurisdiction over Boateng's Title VII claim with respect to Apple where Apple was not named as a respondent in Boateng's charge; and (3) whether, because she was never "terminated", Boateng can state a cause of action for negligent infliction of emotional distress.

As set forth in more detail below, the court concludes that: (1) because Boateng's claim for constructive discharge was reasonably related to other claims included in the charge filed with the CHRO, the court has subject matter jurisdiction over the Title VII action based on that event; (2) because there is a clear identity of interest between Ledgecrest and Apple, Boateng's failure to name Apple as a respondent in her CHRO charge does not deprive the court of subject matter jurisdiction over the Title VII action against it; and (3) because neither Ledgecrest nor Apple "terminated" Boateng, her action for negligent infliction of emotional distress fails as a matter of law. Accordingly, the motion to dismiss for lack of subject matter jurisdiction (document no. 22) is DENIED and the motion to dismiss for failure to state a claim (document no. 32) is GRANTED.

## FACTS

Examination of the complaint and supporting papers[2] discloses the following relevant facts:

Beginning in June 1993, Ledgecrest employed Boateng, an African American, as a certified nurse's aid. Ledgecrest is a Con-necticut company with its principle place of business located at 154 Kensington Road, Kensington, Connecticut. Apple is a Connecticut corporation with its principle place of business at 21 Waterville Road, Avon, Connecticut. Apple functions as Ledgecrest's "management company", and oversees Ledgecrest's "accounting, physical plant, legal, dietary and nursing [departments.]" Ledgecrest uses Apple's administrative forms when documenting changes to the status of its employees. In addition, Apple and Ledgecrest have the same president and are represented here by the same counsel.

On May 7, 1999, Boateng filed a charge (the "May 1999 charge") with the CHRO and the Equal Employment Opportunities Commission ("EEOC"), alleging workplace discrimination based upon her race. In it, she named Ledgecrest as a respondent and alleged the following:

(1) In the Fall of 1998, two of Boateng's co-workers began referring to her as a "nigger," "an idiot" and a "bitch."

(2) Later that Fall, on three separate occasions, Boateng's co-workers stapled a picture of a gorilla to her time card. In one instance, the picture remained on Boateng's time card for four days before a supervisor removed it and handed it over to the administration.

(3) After these incidents, Boateng confronted management about the pictures, yet they "failed to further investigate the matter." After persisting, Boateng was told by the director of nursing that the director would talk to the co-workers harassing Boateng if "she had time." Eventually, Boateng "went to all levels of management [yet] no one would listen to [her]."

---

**2.** *See Antares Aircraft, L.P. v. Fed. Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991) ("On a motion ... challenging ... subject matter jur-isdiction, the court may resolve disputed jur-isdictional fact issues by reference to evidence outside the pleadings ....").

(4) On March 26, 1999, allegedly as a result of her continuing complaints to management regarding the alleged abusive treatment she was being subjected to, Boateng received a three day suspension.

(5) On April 14, 1999, acting on her psychiatrist's recommendation, Boateng took a temporary leave of absence from Ledgecrest due to the stress and anxiety that her working environment allegedly caused her.

On June 13, 1999, Boateng returned to work. On August 5, 1999, however, her psychiatrist again removed her from Ledgecrest due to the stress that her working environment allegedly caused her. On August 23, 1999, Boateng filed an amended charge with the CHRO (the "August 1999 amended charge"). In it, she alleged that Ledgecrest had retaliated against her when it changed the terms and conditions of her employment by altering her schedule and placing her on three months probation.

In November 1999, shortly after she returned to work, a nursing supervisor and two co-workers allegedly began harassing Boateng again. Boateng approached her administrators about this harassing conduct and, like before, her complaints fell on deaf ears. On December 9, 1999, Boateng filed a request for release of jurisdiction with the CHRO, pursuant to Connecticut General Statutes § 46a–101.[3] That request was granted on December 20, 1999.

In late December 1999, Boateng's psychiatrist recommended that she resign from Ledgecrest because "she would decompensate and the severity of her symptoms would return and increase" each time she went back to work, due to "[the] persistent hostile work[ing] environment at Ledgecrest." In January 2000, Boateng resigned from her nurse's aid position at Ledgecrest. On February 15, 2000, the EEOC issued Boateng a right to sue letter with respect to Ledgecrest. Weeks later, on March 1, 2000, Boateng commenced this action against Ledgecrest and Apple.

## STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure must be granted where a plaintiff has failed to establish subject matter jurisdiction. *See Golden Hill Paugussett Tribe of Indians v. Weicker*, 839 F.Supp. 130, 136 (D.Conn.1993). In analyzing a motion to dismiss under this rule, the court must accept all well pleaded factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993). Also, where subject matter jurisdiction is challenged, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d. Cir.1991).

Apple and Ledgecrest have also moved to dismiss count two of the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, maintaining that Boateng has failed to state a cause of action upon which the court can grant relief. Such a motion "merely ... assess[es] the legal feasibility of the complaint, [it does] not ... assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Mer-*

---

**3.** Connecticut General Statutes, section 46a–101(b) states in relevant part: "The complainant, or his attorney, may request a release from the commission if his complaint is still pending after the expiration of two hundred and ten days from the date of its filing." Conn. Gen.Stat. § 46a–101(b).

*rill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). When ruling on a motion to dismiss, the court must presume that the well-pleaded facts alleged in the complaint are true and draw all reasonable inferences from those facts in favor of the plaintiff. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). A court may dismiss a complaint at this stage only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The issue at this juncture is not whether the plaintiff will prevail, but whether she should have the opportunity to prove her claim. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

I. *Title VII: Employment Discrimination—Failure to Exhaust Administrative Remedies and Fed.R.Civ.P. 12(b)(1)*

Apple and Ledgecrest first move to dismiss the Title VII action to the extent it is based on Boateng's allegation of constructive discharge. They argue that Boateng did not exhaust her administrative remedies because she failed to raise this claim with the CHRO and the EEOC. Because of this, they maintain, the court is without jurisdiction to adjudicate her action. Boateng responds that, while she did not include in her May 1999 charge her claim of constructive discharge stemming from her January 2000 forced resignation, this court does have jurisdiction because that claim was "reasonably related" to the other allegations detailed in her May 1999 charge.

■ "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1400 (2d Cir.1993). In *Butts,* the Second Circuit identified several "kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair … to bar such claims in a civil action." *Id.* at 1402. One type of "reasonably related" claim describes a situation "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* The *Butts* court acknowledged that a discriminatory incident carried out in precisely the same manner could be reasonably related even though it "might not fall within the scope of the EEOC investigation arising from the charge, since it might occur after the investigation was completed …." *Id.* at 1403. Under this subset of reasonably related claims, a plaintiff would not be circumventing the policy underlying the exhaustion requirement because "the EEOC would have had the opportunity to investigate … the method of discrimination manifested in prior charged incidents." *Id.*

■ Here, the court concludes that Boateng's January 2000 constructive discharge claim is reasonably related to the discrimination claims detailed in Boateng's May 1999 charge and her August 1999 amended charge. Specifically, although the January 2000 constructive discharge was not included in Boateng's May 1999 charge or her August 1999 amended charge, it was carried out in "precisely the same manner" as the discriminatory events described in her earlier-filed charges.

Boateng's May 1999 charge alleged that, since September of 1998, Boateng was "harassed and discriminated against by [Ledgecrest] [ ]employees, management and

the administration" and "wrongfully suspended" based on her race. In addition, it states that she "went to all levels of management" seeking recourse, but that "no one would listen to [her]." The May 1999 charge further alleged that in April 1999, "due to the abuse and harassment" she was subjected to and the "stress and anxiety" it caused, Boateng took heed of her psychiatrist's advice and left work. Jumping forward in time, one of the events that contributed to Boateng's constructive discharge in January of 2000 was a confrontation with a nursing supervisor and two co-workers in November 1999 during which she alleges that she was harassed and treated improperly based on her race. According to the federal court complaint, Boateng brought this incident to the attention of Ledgecrest administrators who ignored her complaints as they had months earlier.

As the dates disclose, this confrontation, Boateng's subsequent complaint to management, and her ultimate forced resignation took place *after* she filed her May 1999 charge and her August 1999 amended charge. In *Butts,* however, the Second Circuit contemplated just this type of temporal sequence, noting that the values associated with the exhaustion requirements would not be "entirely lost" under such a scenario because, while the agency would not have the opportunity to investigate the exact discriminatory incident, it would nonetheless be able to investigate the "method of discrimination." *Butts,* 990 F.2d at 1403. Here, the method of discrimination was the abusive and harassing treatment by co-workers which would go unremedied by the defendants' management. This precise method characterized Boateng's pre *and* post-May 1999 charge experiences at Ledgecrest. The only differences between the incidents alleged in the May 1999 charge and incidents occurring *after* the filing of the May 1999

charge are the names of the co-workers who supposedly engaged in the discriminatory conduct. In view of this insignificant distinction, the court concludes that the allegations of discrimination not explicitly raised in the two charges were carried out in "precisely the same manner" as the incidents described in those earlier charges and, therefore, are "reasonably related." Accordingly, the court has jurisdiction to adjudicate Boateng's Title VII action in its entirety.

II. *Title VII: Employment Discrimination—Failure to Exhaust Administrative Remedies with Respect to Apple and* Fed. R. *Civ. P·12(b)(1)*

Next, the defendants move to dismiss the Title VII complaint with respect to Apple, arguing that Boateng is barred from naming Apple as a defendant in this action because she failed to include the company as a respondent in her May 1999 charge and August 1999 amended charge. Specifically, they argue that Apple did not have notice of Boateng's claims and did not have an opportunity to participate in the CHRO's voluntary conciliation process. Boateng responds that, although she failed to name Apple, this omission is not fatal to her action against it because Apple and Ledgecrest function as the "same employer." Notice to Ledgecrest, her argument goes, suffices to give notice to Apple. The defendants do not respond directly to Boateng's "same employer" argument. Instead, they raise the "identity of interest" exception (which would excuse Boateng's failure to name Apple as a respondent in the May 1999 charge) and argue that the exception is not applicable in this case.

"Generally, an action under Title VII can proceed only against those individuals named as respondents in the [EEOC] complaint." *Maturo v. Nat'l Graphics, Inc.,* 722 F.Supp. 916, 924 (D.Conn.1989).

There is an exception to this general rule, however, known as the "identity of interest" exception, which "permits a Title VII action to proceed against an unnamed party where there is a clear 'identity of interest' between the unnamed party and the party named in the administrative charge." *Johnson v. Palma*, 931 F.2d 203, 209–10 (2d Cir.1991). This exception allows an action to proceed "against a party not named as a respondent in the EEOC complaint if the underlying dual purposes of the exhaustion requirement are ... satisfied." *Maturo v. Nat'l Graphics, Inc.*, 722 F.Supp. 916, 924 (D.Conn.1989). These dual purposes are: (1) "to provide notice to those alleged to have committed the violations[;]" and (2) "to provide an opportunity for the parties to comply voluntarily with the requirements of Title VII." *Id.* at 925.

When assessing the applicability of the identity of interest exception, courts consider the following four factors: (1) "whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings[;]" (2) "whether [the unnamed party's] absence from the EEOC proceedings resulted in actual prejudice to [its] interests[;]" (3) "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party[;]" and (4) "whether the role of the unnamed party could[,] through reasonable effort by the complainant[,] be ascertained at the time of the filing of the EEOC complaint." *Johnson v. Palma*, 931 F.2d at 209–10.

■ The Court concludes that the "identity of interest" exception is applicable here, and that Boateng's failure to name Apple as a respondent in her May 1999 charge or August 1999 amended charge is not fatal to her action. With respect to the first factor, Apple and Ledgecrest's interests here are sufficiently similar for the purpose of voluntary compliance. The information available to the court indicates that Apple "manages" Ledgecrest's accounting, legal, dietary, and nursing departments and, therefore, has supervisory control over Boateng's former department. Further, for conciliation purposes, Apple and Ledgecrest share the same president.

With respect to the second factor, the court concludes that Apple was not prejudiced by its lack of opportunity to participate in the EEOC proceedings because no such proceedings were ever initiated in this case. Before such proceedings could commence, the CHRO granted Boateng's request for release of jurisdiction because her charge had been pending for more than 210 days.

As to the third factor, it would be reasonable to infer that Apple represented to Boateng that its relationship with her was to be through Ledgecrest. Apple's corporate name appeared on numerous forms and evaluations dealing with her employment. At the same time, however, Apple had no direct contact with Boateng, which could have led her to believe that she was to deal with Apple only through Ledgecrest.

Finally, with respect to the fourth factor, Boateng may have been able to ascertain Apple as a proper respondent at the time she filed her charge. On balance, however, the situation presented here leads the court to conclude that there is a clear "identity of interest" between Ledgecrest, who *was* named in the administrative complaint, and Apple, who was not. *See Johnson v. Palma*, 931 F.2d 203, 209–10 (2d Cir.1991). Accordingly, the court

has jurisdiction to adjudicate Boateng's Title VII action against Apple.

III. *Negligent Infliction of Emotional Distress and Fed. R. Civ. P. 12(b)(6)*

Apple and Ledgecrest next ask the court to dismiss count two of the complaint, arguing that Boateng's claim of negligent infliction of emotional distress fails to state a cause of action upon which relief can be granted. Specifically, Apple and Ledgecrest argue that this action fails as a matter of law because Boateng was not terminated, but instead resigned from her position at Ledgecrest. Boateng does not respond to this argument.

In *Parsons v. United Tech. Corp.*, 243 Conn. 66, 700 A.2d 655 (1997), the Connecticut supreme court held that "a claim for negligent infliction of emotional distress in the employment context only arises when it is based on unreasonable conduct of the defendant in the termination process." *Parsons*, 243 Conn. at 88, 700 A.2d 655. "This District has consistently held that a state-law claim of negligent infliction of emotional distress in employment cases arises only in the context of a termination." *Abate v. Circuit–Wise, Inc.*, 130 F.Supp.2d 341, 346 (D.Conn.2001); *see also Gomez–Gil v. Univ. of Hartford*, 63 F.Supp.2d 191, 193 (D.Conn.1999); *Cameron v. St. Francis Hosp. & Med. Ctr.*, 56 F.Supp.2d 235, 240 (D.Conn.1999); *White v. Martin*, 23 F.Supp.2d 203, 208 (D.Conn.1998), *aff'd*, 198 F.3d 235 (2d Cir.1999).

In *Hart v. Knights of Columbus*, No. CV980417112S, 1999 WL 682046, at *1 (Conn.Super.Aug.17, 1999) a Connecticut superior court addressed a situation where a plaintiff's complaint asserted only a claim of constructive discharge. *Id.* at *2–3. The court held that such allegations failed to establish the necessary element of termination, thereby precluding the plaintiff from maintaining a cause of action for negligent infliction of emotional distress. *Id.* at *4. "Normally, an employee who resigns in not regarded as having been discharged and [therefore] would have no right of action for [abuse] [during] such discharge." *Hart v. Knights of Columbus*, No. CV980417112S, 1999 WL 682046, at *4 (Conn.Super.Aug.17, 1999).

In the instant case, Boateng was never terminated as *Parsons* and *Hart* require. As a matter of law, then, Boateng cannot establish a claim for negligent infliction of emotional distress.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss count one for lack of subject matter jurisdiction (document no. 22) is DENIED. The defendants' motion to dismiss count two for failure to state a cause of action upon which relief can be granted (document no. 32) is GRANTED.