Denise PECORARO, Plaintiff,

v.

NEW HAVEN REGISTER, Defendant.

No. 3:04CV0017(WWE).

United States District Court,
D. Connecticut.

Oct. 26, 2004.

Eugene N. Axelrod, Woodbridge, CT, for Plaintiff.

### Ruling on Defendant's Motion to Dismiss Counts Seven and Eleven [Doc. # 7]

EGINTON, Senior District Judge.

Pursuant to Rule 12(b)(6), Fed.R.Civ.P., defendant, New Haven Register, has moved to dismiss counts seven and eleven of plaintiff's complaint for failure to state a claim upon which relief may be granted [**Doc. # 7**]. Plaintiff responded to this mo-

tion by filing an amended complaint with additional factual allegations, which defendant has addressed in its reply memorandum. Accordingly, the Court will treat defendant's motion to dismiss as addressed to the amended complaint. For the reasons set forth below, defendant's motion will be granted.

## Discussion

### I. Motion to Dismiss Standard

The function of a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (internal citations and quotation marks omitted). Thus, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

A motion to dismiss should not be granted for failure to state a claim unless the movant proves beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). In ruling on a motion to dismiss, the Court is limited to the facts set forth on the face of the complaint, any documents attached thereto as exhibits or incorporated by reference, and matters of which the Court may take judicial notice. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991). Furthermore, the Court must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683; *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). However, conclusions of law or unwarranted deductions of fact are not admitted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995).

### II. Background

In an eleven-count complaint filed against her former employer, plaintiff alleges a two-year history of sexual harassment by her supervisor and subsequent retaliation, which ultimately forced her to resign her employment. She asserts claims for (1) a hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.;* (2) retaliation in violation of Title VII; (3) constructive discharge as a result of the harassment and hostile work environment in violation of Title VII; (4) a hostile work environment under Connecticut's Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a–60(a)(4); (5) retaliation in violation of CFEPA, Conn. Gen.Stat. § 46a–60(a)(4); (6) harassment and creation of a hostile work environment in violation of Conn. Gen.Stat. § 46a–60(a)(8); (7) breach of implied contract; (8) promissory estoppel; (9) negligent misrepresentation; (10) intentional infliction of emotional distress; and (11) negligent infliction of emotional distress.

Defendant's motion to dismiss is addressed only to counts seven and eleven, which it maintains should be dismissed because:

A. Count seven, alleging breach of implied contract, fails to state a claim as a matter of law because defendant's sexual harassment policy—the alleged contract—does not represent a separate

and independent contractual obligation on the part of defendant. Moreover, the alleged contract is unenforceable for lack of consideration.

B. Count eleven, alleging negligent infliction of emotional distress, fails to state a claim as a matter of law because plaintiff does not allege any unreasonable conduct by defendant during the termination of her employment. Instead, all of plaintiff's allegations concern conduct that occurred during the course of her employment.

(Def.'s Mem. at 1.)

### III. Factual Allegations

Plaintiff was hired by defendant for the position of telemarketer on January 8, 2001. She was quickly appointed to the position of sales trainer. Shortly after her hire, Mr. Lee Abrams became the day supervisor of the telemarketing department, in which plaintiff worked. After he became her direct supervisor, Abrams continuously made offensive sexual remarks, accusations, and gestures of a sexual nature to plaintiff. On several occasions, he graphically inquired about her sexual activities with her husband and, on other occasions, suggested that she was having sexual relations with other men. Plaintiff describes other incidents where he made sexual advances toward her and where he suggested that she engage in sexual activities with him. She also relates comments that he made about the size of her breasts and degrading comments about her appearance. On one occasion, he removed a tampon from her purse and held it over his head for other employees to see. According to plaintiff, Abrams also engaged in inappropriate behavior of a sexual nature toward other female employees.

Plaintiff states that the department manager, Terry Tucker, observed this behavior by Abrams but did nothing to stop it. Tucker repeatedly told plaintiff that she would take care of it, but did nothing.

Plaintiff finally told Tucker that she was going to make a formal complaint to the Human Resources Department. Tucker told plaintiff not to do this and warned her that her job would be on the line if she reported this behavior by Abrams. According to plaintiff, Tucker took no action despite her repeated complaints, and Abrams' harassment of her continued. After plaintiff advised Tucker that she was going to retain legal counsel, Tucker reassured her that she was working on the problem and asked her not to get legal counsel. Shortly thereafter, plaintiff alleges that Tucker and Abrams began to falsely accuse plaintiff of misconduct.

In July, 2002, while plaintiff was on vacation, her sales training position was taken away from her without warning and given to Abrams. She received a written warning about using her cell phone, despite the fact that Abrams and Tucker were aware that she was talking to her twelve-year-old daughter, who was ill. Plaintiff reported this incident to Robert Jones in Human Resources, who told plaintiff that Tucker could handle it. When Tucker learned that plaintiff had complained to Human Resources, she was furious and told plaintiff never to question her authority.

Thereafter, plaintiff states she was treated differently than other employees, including having her phone calls monitored by Tucker, receiving written warnings for things that she did not do, and having to submit a doctor's note for health-related absences. When plaintiff requested copies of the written warnings that she had received, she discovered that they had been altered to remove important information.

On October 14, 2002, plaintiff became ill with migraine headaches as a result of the stress at work. She remained out of work for three days. When she returned, Tucker reprimanded her for parking in the

visitors' lot, where plaintiff had always parked. Tucker then accused her of asking other employees to assist her in taking legal action against the department, which plaintiff denied she had done. Tucker further accused plaintiff of calling Abrams "Hon," which plaintiff also denied. That same day, Abrams and Tucker changed the department seating arrangements and placed plaintiff at a station with an inoperable computer. Plaintiff overheard Abrams and Tucker say, "We will really fix her now." After leaving work that day, plaintiff became ill with chest pains and a severely upset stomach.

On October 18, 2002, plaintiff expressed her concern at a staff meeting that some employees had been falsifying sales. Later that day, an employee threatened plaintiff and told her that she was going to "wipe [her] ass all over the New Haven Register parking lot." Plaintiff reported this incident to Tucker, whose only response was that plaintiff should do whatever she wanted to do. Plaintiff contacted the police and filed a report concerning the incident. Tucker and Abrams then told plaintiff to go home. When plaintiff arrived home, there was a message on her answering machine stating, "You are married to a sick bitch." Plaintiff contacted the police and filed another report concerning the message.

Plaintiff then took the tape to work and played the message for Tucker, suggesting to him that she thought she knew who had left the message. Tucker refused to acknowledge plaintiff's concerns for her safety, and thereafter plaintiff contacted the Human Resources Department and filed a formal complaint concerning the incident. No action, however, was taken by Human Resources concerning the complaint.

On November 22, 2002, plaintiff filed a complaint of discrimination with Connecticut's Commission on Human Rights and Opportunities ("CHRO"). Thereafter, she was subjected to increasing hostility at work and harassing phone calls at home. In December 2002, when plaintiff's daughter answered the home phone, the unidentified caller told her that she should be afraid and that her mother was going to be "beaten up."

Plaintiff informed Tucker of the continuing harassment, including the phone call that her daughter received, and again Tucker refused to do anything. Plaintiff also took a tape of the harassing phone calls to Lee, but he refused to listen to the tape and told her that he did not believe that any of plaintiff's co-workers had made the calls. In fact, he even accused plaintiff of making the calls herself and mockingly imitated the harassing caller, with a grotesque and hysterical look on his face. Plaintiff told him she thought he was insane and walked out of his office.

Later that day, plaintiff went home with severe pains in her stomach and went to see her doctor. Her doctor told her not to return to work because the harassment was too stressful for her. In January 2003,[1] plaintiff was forced to terminate her employment because she was mentally and physically unable to return to work.

## IV. Count VII—Breach of Implied Contract

▮ Plaintiff alleges that defendant, by its words, conduct, and actions, created an implied contract that sexual harassment was prohibited, that employees would be afforded an opportunity to discuss problems that occurred on the job, that defendant would address and remedy sexual harassment in the workplace, that defendant would discipline employees engaging

---

1. The Court assumes, and defendant concedes, that the correct date is 2003 rather than 2004, which appears in plaintiff's amended complaint.

in sexual harassment, and that certain remedies existed for sexual harassment. Plaintiff claims that defendant failed to abide by the terms of these implied contracts,[2] as a result of which she was forced to terminate her employment and suffered damages.

As defendant argues, plaintiff's breach of implied contract theory ignores the fundamental principle that an implied contract, like an express contract, depends on an actual agreement between the parties. Defendant must have agreed to have undertaken a contractual commitment to plaintiff. *Peralta v. Cendant Corp.*, 123 F.Supp.2d 65, 83 (D.Conn.2000) (citing *Therrien v. Safeguard Mftg. Co.*, 180 Conn. 91, 94, 429 A.2d 808 (1980)). Moreover, there must have been a meeting of the minds between the parties. *Christensen v. Bic Corp.*, 18 Conn.App. 451, 458, 558 A.2d 273 (1989). Plaintiff fails to allege any facts that would support a finding that defendant had undertaken a *contractual* commitment to plaintiff with regard to preventing or addressing sexual harassment in the workplace. Plaintiff's general assertion that an implied contract existed based upon defendant's "words, comments, and actions" without more is insufficient to establish such an undertaking or a meeting of the minds.

It is not clear from the complaint whether defendant had a written anti-discrimination policy (although presumably it did, *see generally Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)), or whether plaintiff's claim is premised on federal and state anti-

discrimination laws. In either case, to accept plaintiff's theory would be tantamount to saying that any deviation by an employer from its anti-discrimination policy or from the federal or state anti-discrimination laws gives rise to a claim for breach of an implied contract. That is not the law. As this Court stated in *Peralta*, "any promises in the [employer's anti-discrimination] policy are general statements of adherence to the anti-discrimination laws, [and] standing alone they do not create a separate and independent contractual obligation." 123 F.Supp.2d at 84.

Plaintiff cites to the familiar line of cases that established the concept of an implied covenant of good faith and fair dealing in every employment relationship and which are often relied upon by at-will employees alleging wrongful termination. *See Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 13, 662 A.2d 89 (1995); *D'Ulisse–Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 214–16, 520 A.2d 217 (1987); *Coelho v. Posi–Seal International, Inc.*, 208 Conn. 106, 111, 544 A.2d 170 (1988). To quote from plaintiff's brief, these cases stand for the proposition that "an employee's at-will status may be modified by acts of the employer that are sufficiently definite to establish an express contract between the parties." (Pl.'s Mem. at 5.) This requires "specific representations" as opposed to general expressions. (Pl.'s Mem. at 5.) No such specific representations or sufficiently definite acts by defendant, however, have been alleged that would give rise to an implied contract.[3]

---

**2.** More specifically, plaintiff alleges that defendant breached these implied contracts by failing to prohibit Abrams from engaging in sexual harassment, by failing to remedy incidents of sexual harassment, by failing to afford employees the opportunity to discuss job-related issues and problems, by penalizing plaintiff for reporting incidents of sexual harassment, and by failing to discipline em-

ployees who conducted themselves in a manner evidencing sexual harassment.

**3.** In alleging a claim for breach of the implied covenant of good faith and fair dealing, it is not enough for the plaintiff to point to an important public policy. A plaintiff bringing this claim must also establish that he or she does not otherwise have an adequate means

Accordingly, plaintiff's seventh count for breach of implied contract is dismissed.

## V. Negligent Infliction of Emotional Distress

■ Defendant next asserts that count eleven, plaintiff's claim for negligent infliction of emotional distress, must be dismissed because, under Connecticut law, such a claim in an employment case arises only in the context of unreasonable and outrageous conduct on the part of the employer during the termination process. Because plaintiff was not terminated, defendant argues, her claim for negligent infliction of emotional distress must fail. Plaintiff responds that she was constructively discharged as a result of the ongoing pattern of harassment by her supervisor, management's failure to act, and their subsequent retaliation against her. Under Connecticut law, she argues, a constructive discharge is legally equivalent to a termination, citing *Grey v. City of Norwalk Board of Education,* 304 F.Supp.2d 314, 333 (D.Conn.2004).

■ To establish a claim of negligent infliction of emotional distress, the plaintiff must prove the following elements: (1) that defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) that plaintiff's distress was foreseeable; (3) that her emotional distress was severe enough that it might result in illness or bodily harm; and (4) that defendant's conduct was the cause of the plaintiff's distress. *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 444, 815 A.2d 119 (2003); *Barrett v. Danbury Hospital,* 232 Conn. 242, 261–62, 654 A.2d 748 (1995). Additionally, where the claim arises in an employment context, the Connecticut Supreme Court has held that the tort occurs only when it is "based upon unreasonable conduct of the [employer] in the termi-

nation process." *Parsons v. United Technologies Corp.,* 243 Conn. 66, 88, 700 A.2d 655 (1997) (quoting *Morris v. Hartford Courant Co.,* 200 Conn. 676, 682, 513 A.2d 66 (1986)).

In *Perodeau v. City of Hartford,* 259 Conn. 729, 792 A.2d 752 (2002), the Connecticut Supreme Court recently re-emphasized its *Parsons* holding that this tort is confined to conduct occurring during the termination process. The Court held that, for policy reasons, an individual employee "may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." *Perodeau,* 259 Conn. at 744, 792 A.2d 752. Although *Perodeau* concerned the liability of an individual defendant, the courts have repeatedly held that the reasoning applies equally to corporate employers. *See Brunson v. Bayer Corp.,* 237 F.Supp.2d 192, 208 (D.Conn. 2002) (citing cases). "[A]fter *Perodeau,* only conduct occurring in the process of termination can be a basis for recovery for negligent infliction of emotional distress in the employment context." *Brunson,* 237 F.Supp.2d at 208; *see also Blantin v. Paragon Decision Resources, Inc.,* No. 3:03CV2162, 2004 WL 1964508, at *2 (D.Conn. Aug. 31, 2004) (citing cases).

■ Given these parameters, two issues are presented by defendant's motion to dismiss plaintiff's claim for negligent infliction of emotional distress in the instant case: (1) whether Connecticut courts would recognize a claim for negligent infliction of emotional distress in the context of a wrongful discharge as opposed to a termination; and (2) whether plaintiff has alleged conduct occurring during the "ter-

of vindicating that public policy. *Venterina v. Cummings & Lockwood,* 117 F.Supp.2d 114, 119 (D.Conn.1999); *Bennett v. Beiersdorf, Inc.,* 889 F.Supp. 46, 49 (D.Conn.1995).

mination process" that is sufficiently egregious to sustain a negligent infliction of emotional distress claim.

In *Grey v. City of Norwalk Board of Education,* 304 F.Supp.2d at 332, this Court addressed the first question, which it described as a "novel issue," and held that under Connecticut law constructive discharge would qualify as the termination of employment for purposes of a negligent infliction of emotional distress claim. *Accord Grossman v. Computer Curriculum Corp.,* 131 F.Supp.2d 299, 300 (D.Conn. 2000) (holding that "as plaintiff alleges that he was constructively discharged, his claim of negligent infliction of emotional distress survives summary judgment"); *Rapp v. United Technologies Corp.,* No. CV 960557477S, 1999 WL 329815 (Conn.Super.Ct. Apr.29, 1999) (striking plaintiff's negligent infliction of emotional distress claim where plaintiff failed to prove constructive discharge); *but see Boateng v. Apple Health Care, Inc.,* 156 F.Supp.2d 247, 250 (D.Conn.2001) (holding that a claim for negligent infliction of emotional distress cannot be maintained in a constructive discharge case).

In the case of a constructive discharge, however, the conundrum becomes when does the ongoing employment relationship end and the termination process begin for purposes of determining what events and conduct by the employer may be considered in evaluating a negligent infliction of emotional distress claim. *See Perodeau,* 259 Conn. at 758–59, 792 A.2d 752. The Court in *Grey* did not specifically address this issue, but found that the activities alleged, while wrongful, were not "sufficiently wrongful that the defendant should have realized that its conduct involved an *unreasonable* risk of emotional distress." 304 F.Supp.2d at 333 (quoting *Perodeau,* 259 Conn. at 751, 792 A.2d 752) (internal quotation marks omitted).

In *Michaud v. Farmington Community Ins. Agency,* No. CV010806951S, 2002 WL 31415478 (Conn.Super.Ct. Sept.25, 2002), a constructive discharge case, the court refused to extend the termination process to cover events occurring during the course of the employment relationship. There, as in the instant case, the plaintiff claimed that her employer effectively terminated her by virtue of its course of conduct extending throughout the employment relationship. Because there was no bright dividing line between conduct occurring in the course of the employment relationship and conduct occurring during the termination of employment, the plaintiff argued that a question of fact was presented to be decided by the jury. The court disagreed based on the restrictive language of *Perodeau.* Noting that the Connecticut Supreme Court had narrowly phrased its holding to limit the tort to "conduct occurring in the termination process" as opposed to the "discharge process," which might contemplate a more expansive time frame, the court held that

> [c]onduct justifying the termination, or, on the other hand, compelling the resignation, is not itself the actual termination. Termination means the ending, not the conduct which caused the ending. When one analyzes the policy reasons underlying *Perodeau,* one sees that conduct taking place within the employment relationship, even if wrongful and providing the basis for the claim of unlawful discharge, cannot provide the factual predicate for the emotional distress claim. If the actual termination is conducted wrongfully, then the action may lie. If the termination would be said to permeate the entire course of employment, then the reasoning of *Perodeau* would be hollow indeed.

2002 WL 31415478, at *3 (footnote omitted). Thus, the court concluded that the termination began, at the earliest, at the

time the plaintiff physically left the employment, and the court refused to consider any conduct by the employer occurring prior thereto.

In this case, plaintiff has based her claim of negligent infliction of emotional distress on the harassment and retaliation that allegedly occurred over the course of her entire two-year employment relationship with defendant. Based on the holdings of *Perodeau* and *Michaud,* this Court holds that no cause of action will lie for negligent infliction of emotional distress under the facts as alleged. No facts are alleged concerning events that occurred during the resignation process or once plaintiff terminated her employment. Even if the Court considered the events transpiring shortly before she resigned, her only allegation is that defendant's Human Resources officer did not want to hear the tape of the harassing phone call her daughter received and accused plaintiff of making the phone call herself, rather than one of her co-workers. In so doing, he mimicked her in an offensive manner. While this alleged conduct is tasteless, insensitive, and highly inappropriate for someone in the human resources field, it does not rise to the level of conduct that is sufficiently wrongful that defendant should have realized that it involved an *unreasonable* risk of emotional distress. *See Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978).

Accordingly, the Court grants defendant's motion to dismiss count eleven of plaintiff's amended complaint. This ruling is without prejudice to plaintiff's refiling her complaint to allege with clarity events that transpired during the "termination process," should she choose to do so.

### Conclusion

The Court concludes that plaintiff's amended complaint fails to set forth a claim upon which relief may be granted as to count seven, breach of implied contract, and count eleven, negligent infliction of emotional distress. Defendant's motion to dismiss [**Doc. # 7**] counts seven and eleven of plaintiff's amended complaint is GRANTED.