**Sotero ROSARIO, Plaintiff,**

v.

**J.C. PENNEY, Defendant.**

**Civil Action No. 3–05CV00550 (JCH).**

United States District Court,
D. Connecticut.

Nov. 29, 2006.

John R. Williams, New Haven, CT, for Plaintiff.

Lisa Abram, J.C. Penney Company, Inc., Legal Department, Plano, TX, Stuart M. Katz, Cohen & Wolf, P.C., Bridgeport, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. No. 51]

HALL, District Judge.

Sotero Rosario ["Rosario"] brings an action against his former employer, J.C. Penney ["Penney"]. J.C. Penney moves for summary judgment as to Rosario's claims for Breach of Implied Contract (Count Six[1]), Promissory Estoppel (Count Seven), Negligent Misrepresentation (Count Eight), Negligent Supervision (Count Ten), and Assault and Battery (Count Thirteen).[2]

## I. STANDARD OF REVIEW

In a motion for summary judgment, the burden lies on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *SCS Communications, Inc. v. Herrick Co.*, 360 F.3d 329, 338 (2d Cir.2004). The moving party may satisfy this burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir.2002) (per curiam) (internal quotation marks and citations omitted); *accord*

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995).

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine, " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523 (internal citation omitted). Thus, " '[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper.' " *Id.* (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991)); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992) ("Viewing the evidence in the

---

**1.** All count numbers refer to the Amended Complaint [Doc. No. 21].

**2.** Penney informed the court that it is no longer moving for summary judgment on Ro-

sario's claims for Intentional Infliction of Emotional Distress (Count Nine) and False Imprisonment (Count Twelve).

light most favorable to the nonmovant, if a rational trier could not find for the non-movant, then there is no genuine issue of material fact and entry of summary judgment is inappropriate."). " 'If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.' " *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82–83 (2d Cir.2004) (quoting *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996)).

When a motion for summary judgment is supported by sworn affidavits or other documentary evidence permitted by Rule 56, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading." Fed. R.Civ.P. 56(e); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). Rather, "the [nonmoving] party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment. *Id.* "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted). Similarly, a party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible.

*Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993).

## III. FACTUAL BACKGROUND[3]

In June 1998, Rosario was hired by Penney as a Loss Prevention Officer ("LPO") in the defendant's Meriden store. Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at ¶ 1 [Doc. No. 51–2]. In December 1998, Rosario was promoted to Senior Loss Prevention Manager, and his title was subsequently changed to Loss Prevention Supervisor. *Id.* at ¶¶ 2–3. Rosario's direct supervisor was Store Manager Steven Cason. *Id.* at ¶ 4. Lonnie Swanson was the store's District Loss Prevention Manager. *Id.* at ¶ 6.

LPO Bernard Waldo was terminated for stopping a customer for shoplifting who had in fact not stolen any merchandise.[4] *Id.* at ¶¶ 15–16. Subsequently, Rosario met with Cason and Swanson regarding Waldo's unproductive stop and Rosario's training of LPOs. *Id.* at ¶ 17. On January 10, 2004, two days after this meeting, Rosario complained to the Human Resource Department. *Id.*

Around January 27, 2004, Rosario was given a corrective for failing to properly train his LPOs and also for exhibiting improper behavior in his communications with Penney managers and supervisors.[5] *Id.* at ¶ 18. That same day, Rosario complained to Penney's Home Office, and on April 30, 2004, he filed a complaint with the Connecticut Commission on Human Rights and Opportunities. *Id.* at ¶¶ 19–20.

---

3. For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support his allegations.

4. Penney claims that Waldo's termination occurred on January 8, 2004. *See id.* at ¶ 15.

Rosario states that he has no knowledge regarding that as the date of termination. *See* Plf.'s Stat. at ¶ 15 [Doc. No. 54].

5. Although Rosario agrees that he received such a corrective, he alleges that it was not based in fact. *See* Plf.'s Stat. at ¶ 18.

In June 2004, Rosario did not give Cason his training files for all of his LPOs, as requested by Cason.[6] *Id.* at ¶ 21–22. On June 15, 2004, Swanson arrived at the store where Rosario worked, and Cason asked Rosario to meet them in his office. *Id.* at ¶ 23–24. At this meeting, Swanson told Rosario he wanted to review his training files, as he had done in previous years. *Id.* at ¶ 26. Rosario responded that Swanson could call his attorney if he wanted the files. *Id.* at ¶ 28. Swanson then gave Rosario 60 minutes to produce the files. *Id.* at ¶ 29. Swanson or Cason also asked Rosario to turn over his store keys.[7] *Id.* at ¶ 30.

Subsequently, Paul Murtha, the store's new District Manager as of June 1, 2004, asked and received Rosario's statement of the events that happened on June 15, and he also received statements from Cason and Swanson. *Id.* at ¶¶ 32–33, 36. After reviewing these statements, Murtha terminated Rosario's employment on June 17, 2004. *Id.* at ¶¶ 34–35.

## III. DISCUSSION

### A. Breach of Implied Contract (Count VI)

 "A contract implied in fact, like an express contract, depends on actual agreement, and the party charged must have agreed, either by words or action or conduct, to undertake a contractual commitment to the party seeking to enforce such a commitment." *Peralta v. Cendant Corp.*, 123 F.Supp.2d 65, 83 (D.Conn.2000) (citing *Therrien v. Safeguard Manufacturing Co.*, 180 Conn. 91, 94, 429 A.2d 808

(1980)). An implied contract, like an express contract, requires a "meeting of the minds" between the parties. *Pecoraro v. New Haven Register*, 344 F.Supp.2d 840, 844 (D.Conn.2004).

Penney asserts that neither its Associate Handbook nor its words, actions or conduct created a contractual commitment promising non-discrimination. It argues that not only is there disclaimer language in the Handbook, but Rosario admitted that he did not read through it, but instead only "bumped through" the pages. *See* Def.'s Memorandum in Support of Summary Judgment ("Mem. in Supp.") at 15. Moreover, Penney asserts that there was no meeting of the minds and that there is no evidence supporting an intent on Penney's part to contract with Rosario. *Id.* at 15–16.

Rosario, devoting only three sentences on the issue in his Memorandum in Opposition of Summary Judgment ("Mem. in Opp.") [Doc. No. 54], concedes that there was no express contract promising non-discrimination, but counters that Rosario relied on Penney's "obedience to state and federal law in assuming, until he discovered otherwise, that he would not be subjected to disparate treatment in the workplace because of his race and ethnicity." Plf.'s Mem. in Opp. at 5. Rosario testified in his affidavit that he knew before reading the policy manual that Connecticut law requires non-discrimination in employment and that this topic was discussed at company meetings. *See* Plf.'s Stat. at Ex. A, Rosario Dep. at ¶ 5.

---

6. The parties dispute the extent to which Rosario claimed his lawyer had the training files. *See* Def.'s Stat. at ¶ 22; Plf.'s Stat. at Ex. A, Rosario Aff. at ¶ 10.

7. The parties disagree about which of the two managers ordered Rosario to turn over his keys. *See* Def.'s Stat. at ¶ 30; Plf.'s Stat. at

Ex. A, Rosario Aff. at ¶ 12. The parties also dispute the extent to which Rosario refused to turn over his keys, with Rosario claiming he only asked to be allowed first to gather his belongings. *See* Plf.'s Stat. at Ex. A, Rosario Aff. at ¶ 13.

■ The court finds that Rosario's argument fails, because a claim for breach of implied contract cannot be premised on an employer's general obligation to comply with the federal and state anti-discrimination laws. *See Peralta*, 123 F.Supp.2d at 84 ("As any promises in the policy are general statements of adherence to the antidiscrimination laws, standing alone they do not create a separate and independent contractual obligation."). "[T]o accept plaintiff's theory would be tantamount to saying that any deviation by an employer from its anti-discrimination policy or from the federal or state anti-discrimination laws gives rise to a claim for breach of an implied contract. That is not the law." *Pecoraro*, 344 F.Supp.2d at 844.

Moreover, Rosario has not come forward with any evidence showing that there was ever a meeting of the minds between the parties that would support an intent on the part of Penney to contract with him. Thus, the court grants summary judgment in favor of Penney on this claim.

**B. Promissory Estoppel** (Count VII)

■ The doctrine of promissory estoppel requires "the existence of a clear and definite promise which a promisor could reasonably have expected to induce action or forbearance on the part of the promisee or a third person," and "which does induce such action or forbearance." *D'Ulisse–Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 213, 520 A.2d 217 (1987) (citing Restatement (Second) Contracts § 90 (1973)). It also requires a showing that "injustice can be avoided only by enforcement of the promise." *Id.*

■ Rosario alleges that Penney made, and breached, certain promises of nondiscrimination. However, Rosario presents no evidence to support his claim, other than the same three sentences that also address his breach of contract claim. *See*

Plf.'s Mem. in Opp. at 5. The court finds that no "clear and definite promise" exists in the defendant's general obligation to follow anti-discrimination laws, and neither has Rosario presented evidence showing that the meetings he attended were directed specifically as a promise toward him. Moreover, Rosario's assertion that he "would not have accepted employment at a workplace which did not promise to obey the law," *id.*, does not suffice as action or forbearance on his part, especially considering that when he attended any of these meetings, he was already employed with Penney.

Thus, the court finds that Rosario has not presented any evidence on which a jury could rest a finding of promissory estoppel and grants summary judgment for Penney on this claim.

**C. Negligent Misrepresentation; Negligent Supervision; Assault and Battery** (Counts Eight, Ten, and Thirteen)

The defendant argues that all of these claims are preempted by the Worker's Compensation Act ("WCA"). With certain exceptions, the WCA is the exclusive remedy for personal injuries arising out of and in the course of the injured party's employment. *See* Conn.Gen.Stat. § 31–284(a). The WCA covers only claims that: (1) arise out of the plaintiff's employment and (2) occur "in the course of the employment within the meaning of [Conn.Gen. Stat.] § 31–275(1)." *Herman v. Sherwood Indus., Inc.*, 244 Conn. 502, 710 A.2d 1338, 1339 (1998). "The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and circumstances of the accident." *Id.* (internal citation and quotation marks omitted).

■ The Connecticut Supreme Court has recognized an exception to the WCA exclusivity provision for intentional torts committed by individuals "of such rank in the corporation that [they] may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity." *Jett v. Dunlap*, 179 Conn. 215, 425 A.2d 1263, 1265 (1979); *Suarez v. Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838, 841 (1997). Moreover, the Connecticut legislature amended the WCA in 1993 to exclude from the definition of "personal injury" purely psychological injuries, *i.e.*, a "mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease." Conn.Gen.Stat. § 31–275(16)(B)(ii). Thus, the WCA does not bar an action to recover for emotional distress-type claims. *See Perodeau v. City of Hartford*, 259 Conn. 729, 747, 792 A.2d 752 (2002) (holding that WCA did not bar common law tort claim of negligent infliction of emotional distress).

**1. Negligent Misrepresentation and Negligent Supervision**

Rosario failed to address his negligent misrepresentation and negligent supervision claims in his Memorandum in Opposition to Summary Judgment. *See* Mem. in Opp. at 5–6 (seemingly addressing only assault and battery as not barred by the WCA).[8] Based on the sound argument and record presented by Penney on these claims, the motion for summary judgment is granted absent objection.[9]

**2. Assault and Battery**

These claims arise out of confrontations between Rosario and two supervisors, which occurred at the workplace on June 15, 2005. These actions all occurred shortly before, during, or after one of the supervisors demanded that Rosario turn over his keys, and stated that the phone in Rosario's office was for J.C. Penny employees only.

**8.** It is not clear to the court exactly which claims Rosario discusses in his final two brief paragraphs of his Memorandum in Opposition. *See* Mem. in Opp. at 5–6. The first of these two paragraphs rejects Penney's "version of the events attending the plaintiff's termination and relating to his claims of *false imprisonment and assault and battery*" (emphasis added). The last sentence in this paragraph characterizes Penney's discussion of these claims as "a purely legal argument of statutory pre-emption." The paragraph that follows, then, rejects the statutory preemption argument, and although it does not specify as to which claims "defendant's argument is . . . misplaced," the logical inference is that Rosario is only discussing Penney's legal argument regarding the false imprisonment, and assault and battery claims.

**9.** Even if the court were to assume that Rosario was still pursuing these claims, he has failed to present evidence that creates a material issue of fact that these claims are not barred by the WCA. In *Perodeau*, 259 Conn. at 763, 792 A.2d 752, the Connecticut Supreme Court limited negligent infliction of emotional distress claims to emotionally distressing conduct "occurring in the termination of employment." Its reason for this limitation is that "the societal costs of allowing claims for negligent infliction of emotional distress in the context of *ongoing employment* are unacceptably high." *Id.* at 762, 792 A.2d 752 (emphasis added). Plaintiff's complaint claims that Penney should have known that Rosario's superiors were likely to engage in the conduct alleged because Rosario repeatedly reported their behavior to Penney, thus indicating that most of the supposed offensive behavior occurred during his employment. The plaintiff has not presented evidence that his negligent supervision claim relates to the termination of employment, and thus Connecticut appears to "bar[ ] all negligence-based emotional distress claims occurring within a continuing employment context." *Antonopoulos v. Zitnay*, 360 F.Supp.2d 420, 431 (D.Conn.2005). Moreover, Rosario has presented no evidence that he is not seeking recovery for any personal injury caused by the alleged negligent misrepresentation. *See Gomez v. Laidlaw Transit, Inc.*, 455 F.Supp.2d 81, 90 (D.Conn.2006).

Rosario devotes only three sentences to Penney's statutory preemption claim, stating that these claims only involve emotional distress injuries, and thus "the defendant's argument is simply misplaced." *See* Plf.'s Mem. in Opp. at 6. The court disagrees. As Penney points out, Rosario's complaint alleges he was assaulted by Swanson, whose actions "resulted in harmful and offensive contact with the Plaintiff." *See* Amended Complaint at ¶ 203. Rosario alleges that Swanson's forceful grabbing of the telephone receiver and a VHS tape from him resulted in Rosario's finger being cut and indicated that Swanson "acted with the intent to cause bodily harm and injury" to Rosario. *Id.* at ¶¶ 200–02. Despite these allegations, plaintiff's counsel states that "the only injuries which the plaintiff claims pursuant to these state law claims are emotional distress injuries." Plf.'s Mem. in Opp. at 6. In light of that position, the court grants summary judgment to the defendant as to any claim for physical injury and denies it as to any claim for emotional distress.

## IV. CONCLUSION

For the foregoing reasons, Penney's Motion for Summary Judgment [**Doc. No. 51**] is GRANTED as to the claims of Breach of Implied Contract (Count Six), Promissory Estoppel (Count VII), Negligent Misrepresentation (Count Eight), Negligent Supervision (Count Ten), and Assault and Battery to the extent Rosario is claiming physical injury only (Count Thirteen). Penney's Motion for Summary Judgment is DENIED as to the Assault and Battery claim to the extent Rosario is claiming emotional distress only (Count Thirteen). Its Motion for Summary Judgment is withdrawn as to the Intentional Infliction of Emotional Distress (Count Nine) and

False Imprisonment (Count Twelve) claims.

**SO ORDERED.**